We'll move on to the next case of the day, Spiegel v. Kim, Appeal 18-2449. Counsel? Good morning. May it please the court, my name is Chris Langone and I represent the appellant in this case, Marshall Spiegel. What I'd like to do initially is hopefully take off the table the sole basis of the district judge's initial decision granting the motion for judgment on the pleadings, this issue of whether the debt needed to be in default. The Hansen case, Hansen v. Santander by the U.S. Supreme Court case was decided in June 2017, which was after the briefing on the motion for judgment of the pleadings, and the district court in making that holding of default went off the board. That had not actually even been an issue that had been raised by the parties, and I'm addressing specifically on page A8 of the appendix, where the district court says, because Kim is not a debt collector, relying on the affirmative defense set forth in 1692 F3 about default, and that the debt not being in default. Now the defendant— Mr. Langone, Mr. Langone, what exactly is the debt that Mr. Spiegel alleges? That Mr. Kim tried to collect in the state court action, Mr. Spiegel appears to be asserting that Mr. Kim's request for attorney fees in a prayer for relief is an improper attempt to collect a debt. Does that accurately describe his claim? No, I think more accurately was that the improper assertion of attorney's fees violated the FDCPA, which covers the transaction, because the claims arise out of the condo purchase, right? And so this is—even though it's not for assessments, the entire relationship between the parties arise out of the condo purchase. And in fact—I'm sorry, did Your Honor have a question? Well, yes, because Mr. Spiegel characterized the district court's order as finding that the debt arose from litigation, not Spiegel's purchase of his condominium, and that's at page 24 of your brief. But the district court actually says, quote, the obligation to pay those fees, if such an obligation should ever come to pass, arises from Spiegel's litigation conduct, not his purchase of his condo. And that's appendix to the blue brief at A011. Does Mr. Spiegel contest the court's finding that no debt actually yet existed? And if so, on what basis does he contest that? Okay, so the A011 portion that Your Honor cites is the denial of the motion to vacate. So I will certainly address that. But it does not arise from the litigation conduct. That's what the appellant is trying to say, that it arises from the litigation conduct. But the fact that they originally sued Spiegel and the land trust—and this is cited in the Appleese brief on page 4, where they quote the applicable language that shows that the association was bringing the action against Spiegel and the trust. Now the trust, the land trust in Illinois, owns the property, and so obviously this shows that the transaction arose not from Spiegel's individual actions as a board member or his misconduct in litigation, but from the underlying transaction of the condo purchase. If there's no condo purchase, there's no declarations, there's no rules and regulations. Everything that defines this relationship stems back from the condo purchase, which this court has held, comes within the purview of the FDCPA, because it's a transaction primarily for household purposes. Mr. Langone, can I ask you a question to rewind to where you started? Yes, Your Honor. You made the point, if I understood you right, that the district court committed a legal error by not following the rule that the United States Supreme Court announced in its Hansen v. Santander decision. Okay? I'll tell you, I didn't read the decision before argument today because I didn't see you talk about it, and so I went into your briefs just now, and you cite it one time, but not for the proposition that you advanced in the courtroom today. So can you just step back a second and tell me a little bit more about Hansen, what the issue presented was in Hansen, and how the United States Supreme Court's decision there that the district court here committed a reversible legal error? Yes. So, Hansen, we say on... You should have briefed that. We say on page 22 that the district court, the default test was abrogated by Hansen v. Santander. Oh, on where? On page 22 of our brief, I'm sorry, the Supreme Court abrogates the default test, and we cite to the... It's not, yeah, it's not in your table of authorities, but go ahead, go ahead. I don't want to take your time up with this. Okay. On page 22, we cite Hansen v. Santander for the proposition that the default test is misplaced. The appellees try to brush that off on page 13 by saying, well, the cases cited at page 22 and 23 of the brief are not applicable, but the Third Circuit in Tepper v. Amos clearly stated that, and I'm quoting the Third Circuit, the Supreme Court in Hansen has repealed the default test we followed. So your point is the debt doesn't have to be in default that way. And that's what the district court had originally had. I got you. Okay, go ahead. Right, but she didn't have the benefit of Hansen because it hadn't been decided at the time. I understand what you're saying. Go ahead. Okay, yes. So Mr. Langone, do you believe there are any tort claims against your client in the state court proceeding? No. We don't believe that there are any tort claims. Okay. And so your theory here is these are all contract claims, all arising more or less indirectly from the condo purchase, right? Correct. The contract that governs that purchase does allow for attorney's fee awards, correct? For failure to pay assessments or violations of the rules and regulations after a 30-day remedy notice, which was not what was asserted in the state court complaint, which sought declaratory judgment and injunction about Spiegel claiming to be the board's acting president. That doesn't sound to me like a consumer debt claim. The transaction is the condo purchase is the consumer debt. But the litigation doesn't sound like it's about any consumer debt claim. Right. And the request for the attorney's fees was made before the litigation misconduct even occurred. I mean, that's why they're trying to shove 300 pages of additional, you know, 2018 records to somehow, you know, if I make an improper request in a complaint and then for attorney's fees and then the defendant files totally frivolous affirmative defenses and makes false representations and violates rule 11 in 1927 and gets sanctioned, that doesn't justify my improper attorney's fees request in the complaint, right? It can't be justified ex post facto. Whether Mr. Spiegel and Mr. Zdeikis engaged in rule 137 violations in connection with the state court litigation does not backwards justify the improper threat for attorney's fees in the initial complaint. One thing I think is unfortunate here in reading this is it's disheartening to see the temperature turned up so high in litigation. So let's step back for one second, okay? I thought that the reason your adversary went into Cook County to ask for attorney's fees had to do with all of these alleged or demonstrated, you know, ultra-virus acts as a board member when your client was serving as a board member of the condo association. I didn't think it was like to collect back rent or, you know, anything like that. I thought it was all about board service. Well, it wasn't to collect assessments, otherwise, you know, that would be proper under the contract, right? That's exactly why it's an improper request. If the lawsuit, though, if the lawsuit that gave rise to the request for attorney's fees was all about board service, that's where I get disconnected with your point that it's all about the fact that he lived at a particular location and bought a condominium there. I think, no, no, no, it's not about that. It's about whatever went on with the board service and, you know, what the other side thought was wrong about that. I'm going to save my 30 seconds to think about that and maybe in rebuttal try to have a crisp answer to that. Okay. Thank you, Mr. Langone. For defense, Mr. Swafford. Good morning, Your Honors. It pleases the Court. I represent the defendant, Michael Kim, and I'd just like to step back a moment. Without regard to the terms of art under the Fair Debt Collection Practices Act and talk about the underlying case for which he is . . . my client has been sued as allegedly violating that act, but I think your question suggests exactly what he did. Mr. Kim was retained by this condominium association to restrain what they termed as a renegade director from taking over the association, claiming to be the acting president, taking over a bank account, firing the property manager . . . purporting to fire the property manager, purporting to fire Mr. Kim. And they wanted a remedy and Mr. Kim fashioned this complaint and that's why he went to court to get it declared who the true board of directors was, who the true property manager was, who controlled the bank account, et cetera, et cetera, et cetera. That's why he went to court and then he included a prayer for relief, asking for fees. He didn't go to court to begin with to seek any fees. There was no debt that even existed for fees when he went to court, and indeed, he . . . there was no debt that would exist until he would prevail in that action, which . . . So in other words, can I just stop you there? Because if the state court affirms the award of attorney's fees against Mr. Spiegel, are you saying that that amount now would qualify as a debt if Mr. Kim sought to collect it? I was just pointing out . . . I'm not sure I can answer your question, I'm sorry. The debt never even came into existence pursuant to the terms of the complaint because we . . . because of the notice, but my only point was, there was no debt for attorney's fees that even existed when we filed this complaint, and the only way the debt would even exist for attorney's fees if we prevailed on the complaint we filed. Now, would you mind rephrasing your question because I didn't understand it? Mine? Yes. No, I'm just wondering if the state court affirms the award of attorney's fees . . . Oh, now? Yes. Yeah, now, against Mr. Spiegel. I'm just wondering if you think that amount would now qualify as a debt if Mr. Kim . . . I don't think it would under the . . . . . . sought to collect it. I don't think it would qualify as a debt under the Fair Debt Collection Practices Act because it didn't arise out of any consensual transaction. It didn't arise out of any personal, family, or household purpose. It arose out of litigation, not consensual practice. Mr. Swofford, under the . . . if we were to treat the litigation as somehow related to the condo purchase, does the contract that governs the relationships among the condominium owners, which provides for attorney fees in some situations, are those limited to the  No, because they go on and . . . and I haven't here . . . but they go on to provide for any violation of any rule or regulation or anything made by the board. Okay. They're quoted in Exhibit B to, I believe, our motion for judgment on the pleadings. Okay. And . . . Any provision, covenant, restriction of the act, the declaration, the bylaws, any contractual obligation to the board, or the association undertaken by the owner, or any rule or regulation promulgated by the board. Okay. Thank you. And then it goes on to talk about the 30 days' notice that Mr. Langone was talking about, and then it goes on to allege that he was repeatedly warned and remonstrated for his misconduct, etc. What is the status today of Mr. Spiegel's appeals in state court on the related lawsuits and the sanctions and attorney fees? What if he prevails? No, no. What's the status? What's the status of his appeals? What's the status of it? Oh, it's in briefing still. Still? Yes. It's . . . he's filed . . . Mr. Spiegel has filed his brief, and the . . . all the various . . . the condominium association, its various condominium members, the various attorneys who were sued, including my client, their joint brief is due in approximately four . . . three weeks, I think, at joint . . . But, you know, I . . . You know, the . . . I . . . I filed out more . . . I . . . I was . . . I hesitated to file that, but I . . . I filed more for emphasis about this is more . . . this case is really not at all . . . has really virtually nothing to do about what the FDPCA is about, which is debts arising out of personal or family or obligations or transactions. You know, it is a . . . it's a litigation dispute. If . . . suppose one visitor . . . one condominium owner visits another and slips on a spill in the kitchen and is injured and sues in tort and asks for attorney's fees. Would that be a claim for consumer debt under the scope of the federal . . . No, I don't believe . . . I don't believe so, Your Honor. I think that's a good . . . a good example. Okay, thanks. You know, I . . . I . . . another . . . another problem that I . . . this is hard to articulate, but is . . . is . . . is action is some kind of . . . is somewhat outcome dependent with the . . . if . . . in the sense that if he loses the underlying case, there's no FDPC violation, but if he wins, there is an FDPCA violation. I mean, when you put a claim for attorney's fees in a case, when you have an underlying claim . . . the underlying claim in this . . . in this state court litigation was we want to restrain Mr. Speed. Okay? The prayer for relief would like attorney's fees. Okay? And there's many, many cases where you have an underlying claim and then the complaint for attorney's fees. You don't always get the claim for attorney's fees, but you can win the attorney . . . you can get the . . . you can win the attorney . . . you can win the underlying claim and lose the attorney's fees, and then you're still liable for . . . for an FDPCA violation. It's just . . . it's . . . it's just . . . Well, that can happen. The case could begin with nothing about the FDPCA. Counsel. Pardon? Counsel. Yes. You can have such a violation if it is a claim arising out of a consumer debt, and there is an unjustified request for attorneys. If there's a . . . That can violate the . . . Oh, yeah, you . . . So the question I was asking you is about whether this is a debt under the statute. You've answered that, and I believe your time has now expired. Is there anything else you want to tell us? No. No, Your Honor. I . . . Thank you. I'm sorry, Your Honor. Thank you. Thank you. Rebuttal, Mr. Langone. One minute. The whole gravamen of the relationship to address Your Honor's question arises from this transaction, this purchase transaction. There is no . . . He can't even be a board member if he's not a condo owner. But there's . . . The fact that they . . . Is it your assertion that a but-for relationship is enough to establish the required linkage? Yes.  It's the gravamen of the whole relationship. That's an extraordinary comment. So address my slip-and-fall comparison. Slip-and-fall would be a tort that doesn't arise from the relationship between the condo purchaser. But for the condo purchase, there wouldn't have been the accident. And the defendant in the tort action wouldn't have been responsible for it. But that wouldn't be . . . It doesn't involve the relationship concerning the condo owner and the association. A slip-and-fall, right? So . . . And it's an independent tort, negligence action. Suppose they slip-and-fall in the common area. There's . . . Right. But it still would not . . . That stems from a duty independent of the board, the declaration. Independent of the purchase, right? Correct. Completely independent. This is not that case. The fact that they sued the trust, I think, demonstrates that. Thanks, counsel. The case is taken under advisement.